J-S11012-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| JEREMY CLARKE BROCK | : |
| | : |
| Appellant | : No. 1219 WDA 2024 |

Appeal from the Judgment of Sentence Entered September 3, 2024
In the Court of Common Pleas of Erie County
Criminal Division at No: CP-25-CR-0000262-2023

BEFORE: LAZARUS, P.J., STABILE, J., and NEUMAN, J.

MEMORANDUM BY STABILE, J.: **FILED: July 30, 2026**

Appellant, Jeremy Clarke Brock, seeks review of the judgment of sentence entered by the Court of Common Pleas of Erie County (trial court) following a jury trial. In 2024, Appellant was found guilty of murdering his grandmother, Helen Vogt, about 36 years earlier, in 1988. He was sentenced to a prison term of life without parole. Appellant now asserts that the judgment of sentence must be overturned because (a) the trial court had *ex parte* contact with the jury and the Commonwealth to arrange the replaying of video evidence for the jury during deliberations without the prior knowledge of Appellant or his counsel, and (b) the evidence was legally insufficient to identify him as his grandmother's killer. Although the trial court clearly erred in replaying the video without first notifying Appellant and his counsel, the error was ultimately harmless; moreover, the evidence adduced at trial was sufficient to sustain Appellant's convictions. Thus, we affirm.

The following undisputed facts have been gleaned from the certified record. In 1988, Appellant's grandmother, Helen Vogt, was murdered in her home in Erie County. She had succumbed to dozens of stab wounds and blunt force injuries all over her upper body. There were no signs of forced entry, and no immediate arrests were made. Ms. Vogt's car was discovered by police a month later in Canton, Ohio, and it appeared to the officers that the vehicle had been "wiped down," presumably to conceal the identity of whoever drove it out of Erie. *See* N.T. Trial, 7/22/2024, at 90.

About two years later, in 1990, Erie police detectives traveled to LPS Austin Texas, where Appellant resided with his parents. The detectives then executed a warrant in Austin to obtain samples of Appellant's blood, hair, and saliva. Unprompted, Appellant asked the detectives if "Pennsylvania still had the death penalty." N.T. Trial, 7/18/2024, at 67.

Forensic testing of evidence found at the murder scene could not conclusively be matched to Appellant at that time, and neither he, nor anyone else, was charged with the murder of Ms. Vogt for over three decades. Then, in 2022, new lab testing methods yielded a match between Appellant's DNA and samples of genetic material taken in 1988 from his grandmother's bathroom and kitchen sink. Appellant was arrested, extradited from Austin to Erie, and then charged with his grandmother's murder, as well as several other related offenses.

Of relevance to the present appeal, a key piece of evidence introduced by the Commonwealth at Appellant's jury trial was a video, identified as

"Commonwealth's Exhibit 16." This exhibit was a recording of a television interview of Appellant which aired on a local Erie evening news show in November 2022. The news anchor who conducted the interview, Jennifer Mobilia, was contacted by Appellant about two months earlier, after he had been arrested.

The video's content was a 45-minute conversation in which Appellant sought to prove his innocence by providing an alibi and discrediting the murder investigation. The defense had worked with the Commonwealth to make four redactions from the full televised version, and the redacted interview was played for the jury with no objection by the defense.[1] As highlighted by the prosecution at trial, Appellant's statements in the interview conflicted in significant ways with other evidence.[2]

For example, in the interview, Appellant claimed that he was in California at the time of his grandmother's murder; that he had driven his grandmother's vehicle from Erie to Texas once it was released from the custody of the Erie police; and that the detective leading the investigation had been fired due to misconduct committed while working the case. The Commonwealth presented evidence which flatly refuted all of these claims. *See generally* Trial Court 1925(a) Opinion, 7/15/205, at 41-46 (summarizing

_____

[1] The record does not reveal the content of the redacted parts of the interview.

[2] A transcript of the video was entered into evidence as "Commonwealth Exhibit 17."

- 3 -

inconsistencies in Appellant's interview statements with other key pieces of trial evidence).

After deliberations had begun, the jury requested a copy of the transcripts of the video interview. The trial court responded that the applicable rules of procedure prohibited the jury from receiving those materials. Later in the proceedings, while deliberations continued, the trial court called the defense into court to give notice that the video exhibit of Appellant's interview already had been replayed for the jury in the courtroom:

> [Trial Court]: One thing we did not put on the record was the jury requested, though not in writing, that they see the 45 minute or so video that the witness, Jennifer Mobilia, conducted with [Appellant], and I felt it was appropriate to let them see the video again, and they were able to watch it. I could hear his voice in here the whole time, so I know they did play it, and we just wanted to get that on record. Anything else need to be added to that?
>
> [Defense counsel]: Again, this was done after. Do we know how many minutes of video were played because there was a redacted and an unredacted? Since this was done *ex parte*, because there was a representative of the Commonwealth to play it, we weren't there to observe which one was played. Do we know how many minutes the video that was played was?
>
> [Commonwealth]: I directed the video to be played was the one entered into evidence. The person set it up but did not stay per the request of the Court.
>
> [Trial Court]: And that was a redacted video?
>
> [Commonwealth]: Yes, it was the same exact version that was played in Court.
>
> [Defense counsel]: Then for this purpose, I have an objection, as I said earlier, I think that if they were going to watch a video, it should have been directed to certain portions, not played the entire thing as it went almost an hour.

- 4 -

[Trial Court]: Well, it was my discretion under - my discretion under the code to allow them to see the entire video.

[Defense counsel]: I understand that, but I'm putting what my purpose it, for the record, so that it's clear that –

[Trial Court]: All right.

[Defense counsel]: I did voice an objection to that as I think that it could be misleading if they have one particular question. If they ask for photographs, we don't give them every photograph in the thing. We ask for the photographs that were directed. So just I wanted that on the record.

[Trial Court]: All right.

N.T. Trial, 7/24/2024, at 6-7.

The jury found Appellant guilty of first-degree murder, robbery, theft by unlawful taking or disposition, and tampering with or fabricating physical evidence. On the murder count, Appellant was sentenced to a mandatory life sentence. No post-sentence motions were filed.

Appellant timely appealed, and he now raises three issues for our consideration:

I. Did [the trial court] err and/or abuse its discretion when it permitted the jury to review news interview during deliberations *ex parte*, and only advising defense counsel that it did so after the jury reviewed the video and without giving defense counsel the opportunity to either object or to ensure that only relevant parts of the video were played?

II. Did [the trial court] err or abuse its discretion when it essentially allowed the Courtroom to be treated as the jury room when it showed the video without the presence of defense counsel thereby violating and frustrating the purpose of Pa.R.Crim.P. 646?

- 5 -

III. Did the trial court err or abuse its discretion when it denied [Appellant's] Motion for Judgment of Acquittal relative to [Appellant's] conviction for Murder in the First Degree where the Commonwealth failed to prove with sufficient evidence that Appellant was present in the victim's residence on July 22 - 23, 1988, and was the individual who killed, robbed, and stole from victim Helen Vogt?

Appellant's Brief, at 10 (suggested answers omitted).

Appellant's first claim is that it was *per se* prejudicial error for the trial court to replay a video exhibit of Appellant's television interview for the jury, as the trial court did so after having *ex parte* contact with both the jury and the Commonwealth. Appellant contends that these communications completely deprived him of counsel at a critical stage of the proceedings, entitling him to a new trial. *See* Appellant's Brief, at 18-24.

A defendant in a criminal case is guaranteed the right to counsel by both the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution. *See Commonwealth v. Johnson*, 828 A.2d 1009, 1013 (Pa. 2003); *Commonwealth v. Arroyo*, 723 A.2d 162 (Pa. 1999); *see also Powell v. Alabama*, 287 U.S. 45, 69, (1932) (a criminal defendant "requires the guiding hand of counsel at every step in the proceedings against him").

The trial court is prohibited from having *ex parte* contact with the jury and the prosecution, to the exclusion of a defendant and defense counsel. *See generally Commonwealth Bradley*, 459 A.2d 733, 734 (Pa. 1983). "[O]nly those *ex parte* communications between a court and jury which are likely to prejudice a party will require reversal." *Id*., at 734. A likelihood of

prejudice is also required to justify a new trial where the court has had *ex parte* communications with prosecutors. **See Commonwealth v. Barnyak**, 639 A.2d 40, 44 (Pa. Super. 1994).

A new trial may be required to remedy an improper *ex parte* communication, without a showing of prejudice, only in the rare circumstances when it causes a defendant to be completely deprived of counsel during a critical stage of the proceedings. **See generally United States v. Cronic**, 466 U.S. 648 (1984). A "critical stage," for these purposes, means every stage of a trial in which the substantive rights of the accused "may be lost if not exercised at [that] stage." **Mempa v. Rhay**, 389 U.S. 128, 135 (1967). Further, a "critical stage" may be "characterized by an opportunity for the exercise of judicial discretion[.]" **Johnson**, 828 A.2d at 1014. A matter that calls for the exercise of judicial discretion during jury deliberations is no doubt a critical stage of a criminal trial for purposes of the constitutional right to counsel. **See e.g. Siverson v. O'Leary**, 764 F.2d 1208, 1214 (7th Cir. 1985).

In the present case, the trial court erred in excluding Appellant and defense counsel when communicating with the jury and the Commonwealth. However, this exclusion did not "completely" deprive Appellant of counsel during the jury's deliberations. The record reflects that the jury first asked for transcripts of a video exhibit which had been admitted at trial without objection. The trial court correctly advised that the jury was prohibited from receiving such materials. **See** Pa.R.Crim.P. 646. Instead, the trial court arranged to have the video exhibit replayed in its entirety for the jury in the

courtroom. Counsel was notified of this immediately after the fact, and although counsel objected to the *ex parte* contacts, no excludable portions of the video were specified in that objection.

Our Supreme Court, and the United States Supreme Court, have explained that *per se* prejudice arises only in "situations where counsel's failure is complete, *i.e.*, where counsel has entirely failed to function as the client's advocate." **Commonwealth v. Mallory**, 941 A.2d 686, 701 (Pa. 2008) (quoting **Florida v. Nixon**, 543 U.S. 175, 189-90 (2004)). These occasions are "infrequent," as the circumstances giving rise to a presumption of prejudice are extremely "narrow." **Id**.

Appellant has argued in his brief that the facts of this case are indistinguishable from those in **Johnson**, where our Supreme Court held that the court's *ex parte* communications with the jury were *per se* prejudicial. **See** Appellant's Brief, at 22. We find, however, that **Johnson** does not compel reversal in the present case.

In **Johnson**, a deliberating jury asked the trial court to repeat the definitions of several charged offenses, including "stalking, possession of an instrument of a crime, cause or attempt to cause bodily injury with a deadly weapon, and cause or attempt to cause serious bodily injury." **Johnson**, 828 A.2d at 1011. Defense counsel then moved to allow the defendant to be brought into the courtroom while the definitions were read to the jury, but the trial court explained that doing so would delay a different defendant's trial.

Over the defense's objection, all of the parties, including counsel, were directed to leave the courtroom. *See id*.

In the absence of the defendant and defense counsel, the trial court then re-read the requested definitions, as well as the charges for the "aggravated assault [count], justification, the [possession of an instrument of crime] [count], [and] the stalking [count.]" *Id*. After giving these supplemental instructions, a juror asked a follow-up question about the definition of stalking. The trial court responded that the jury had to apply the facts of the case to the definitions that had been read. *See id*.

The defendant argued on appeal that the supplemental instructions were a critical stage of the proceedings at which he had been completely denied the right to counsel. The *Johnson* Court began its evaluation of the claim by determining that jury instructions are indeed a critical stage. *See id*., at 1015. The denial of counsel at that stage therefore involved a "complete, if temporary, denial of counsel by the trial court[.]" *Id*.

The facts of the case at hand are materially distinguishable from those in *Johnson* because the replaying of the video was more of a ministerial than substantive judicial act. The video already had been admitted and played for the jury at trial, and this was distinct from the formal instruction of the jury on points of law. *See Shelton v. Purkett*, 563 F.3d 404, 408 (8th Cir. 2009) ("We question whether the act of handing over a previously admitted exhibit to the jury qualifies as the sort of presumptively prejudicial 'communication'

. . . addressed" in cases where the trial court formally instructs the jury on a point of law in the absence of the defendant and counsel).[3]

The trial court's *ex parte* exchanges were also relatively brief, as opposed to the lengthy contact between the trial court and the jury in **Johnson**. Here, the trial court's direct communications with the jury were limited to the receipt of a request for a transcript, and a follow-up question which the trial court did not substantively answer. The trial court's communications with the prosecution were limited to working out the procedures to be employed when replaying the video exhibit. This is markedly different from the trial court's *ex parte* contacts with the jury in **Johnson**, where the trial court instructed the jury at length on legal definitions and charges, in the absence of the parties. Thus, we find that this is simply not the type of rare case where the presumption of prejudice must apply, and the trial court's error is not one which would automatically entitle Appellant to a new trial.

Since prejudice cannot be presumed, a new trial would only be required if the trial court's error prejudiced Appellant. Appellant argues vaguely in his brief that, had defense counsel been notified in advance of the jury's request for a transcript of the video interview, he would have objected to having the entire video exhibit replayed. However, Appellant did not object to the video's

---

[3] Decisions of the federal circuit or district courts are not binding on this Court, but they be cited for their persuasive value on issues of federal law. **See Ball v. Chapman**, 289 A.3d 1, 24 (Pa. 2023).

admission at trial, and he has not identified any specific portion of the video he would have sought to exclude.

The record does not indicate that prosecutors or any of their staff were alone with the jury while the video equipment was being set up, or when the video was replayed. Nor does the record at all suggest that the jury's deliberations were somehow influenced by the procedures employed by the trial court. They simply watched the same video exhibit viewed at trial.

Thus, although the trial court clearly erred in having *ex parte* contact with the Commonwealth and the jury during deliberations, Appellant has not shown that prejudice resulted, and no relief is due on the claim. ***See e.g.***, ***United States v. Smith***, 771 F.3d 1060, 1064 (8th Cir. 2014) (holding that trial court's error in replaying video evidence outside of presence of defendant and defense counsel was harmless where the video had been admitted into evidence with no objection); ***Ellis v. United States***, 313 F.3d 636, 643 (1st Cir. 2002) (stating that momentary *ex parte* contact between court and jury was a "short-term, localized denial of counsel" subject to harmless error analysis, rather than a "wholesale denial of counsel.") (Citation omitted).[4]

_____

[4] The trial court reasoned in its 1925(a) opinion that, by not objecting to the video exhibit at trial, Appellant had "waived any issue on appeal regarding the propriety of admitting and viewing such evidence." Trial Court 1925(a) Opinion, 7/15/2025, at 39. The admissibility of the exhibit at trial has nothing to do with Appellant's constitutional claim on appeal. As soon as defense counsel was notified of the trial court's improper *ex parte* contacts, and decision to replay the video exhibit in its entirety for the jury, a timely

*(Footnote Continued Next Page)*

Appellant's second claim is that the trial court abused its discretion by replaying the video exhibit of his news interview in violation of Pa.R.Crim.P. 646, causing him prejudice due to the undue emphasis placed upon that evidence.

"The decision to allow the jury to refresh their recollection by re-watching a video shown to them at trial is a matter within the discretion of the trial court." **Commonwealth v. Johnson**, 241 A.3d 398, 403 (Pa. Super. 2020) (quoting **Commonwealth v. Antidormi**, 84 A.3d 736, 755 (Pa. Super. 2014)). Such decisions by the trial court are therefore subject to an abuse of discretion standard of review. **See id**.

Under Pa.R.Crim.P. 646, the trial court may allow the jury to view trial exhibits as the court "deems proper," but the jury is prohibited from receiving certain categories of exhibits, including transcripts of trial testimony, any recorded confession by a defendant, a copy of the charging document, and written jury instructions (except the portion of the instructions pertaining to the elements of charged offenses and their defenses). **See** Pa.R.Crim.P. 646(A)-(C).

The purpose of this rule is to avoid "placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not

---

objection was lodged. **See** N.T. Trial, 7/24/2024, at 6-7. Accordingly, the issue was adequately preserved for purposes of appellate review. **See** Pa.R.A.P. 302(a).

in the room with the jury." ***Commonwealth v. Barnett***, 50 A.3d 176, 194 (Pa. Super. 2012). A violation of Rule 646 is only reversible error if prejudice is shown. ***See id***. Prejudice may occur where "there is a likelihood the importance of the evidence will be skewed." ***Id***.; ***see also Johnson***, 241 A.3d at 403 (same).

Here, the trial court abided by Rule 646 because the video exhibit of Appellant's interview did not fall within the rule's ambit. The exhibit was not a transcript of trial testimony, a copy of the charging document, or a written jury instruction. The video also was not a confession, as Appellant was ostensibly using the interview to assert his *innocence*.

Although Appellant has referred to portions of the Commonwealth's argument in which the interview was framed as "a confession," the statements of counsel are not evidence. ***See Commonwealth v. Montalvo***, 986 A.2d 84, 93 (Pa. 2009). The trial court also specifically instructed that, with respect to Appellant's statements in the video interview, it was "entirely" up to the jury how to weigh and consider Appellant's statements. ***See*** N.T. Trial, 7/23/2024, at 193, 196, 204. Since the trial court did not violate Rule 646 by replaying the video exhibit for the jury, Appellant's claim has no merit on that basis alone, and it is unnecessary for this Court to further assess whether Appellant was prejudiced.

Appellant's third claim is that the evidence was legally insufficient to sustain his convictions because the Commonwealth failed to prove beyond a

reasonable doubt that he was the person who murdered his grandmother (Ms. Vogt) and committed the related offenses. **See** Appellant's Brief, at 39. As Appellant challenges only the identity element of each offense, we may conduct our sufficiency review collectively by examining whether there was sufficient evidence that Appellant was in fact the perpetrator of Ms. Vogt's murder.

When reviewing the sufficiency of the evidence, the following standard applies:

> [W]hether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Haahs*, 289 A.3d 100, 104 n.2 (Pa. Super. 2022) (internal citations omitted).

In the present case, the evidence elicited at trial was legally sufficient to prove that Appellant was his grandmother's murderer. The trial evidence established that Ms. Vogt never allowed strangers into her home, and there

were no signs of forced entry. Members of Appellant's own family did not know Appellant's whereabouts in the days and weeks after the murder, and the police debunked Appellant's account of how he took possession of Ms. Vogt's vehicle and where he was at the time of her death. Two years after the murder, when detectives were obtaining DNA samples from him, Appellant abruptly asked if Pennsylvania has the death penalty.

In Appellant's televised interview with an Erie news reporter, Jennifer Mobilia, he made many dubious statements in an effort to establish an alibi. However, an expert in forensic science testified at trial that Appellant's DNA matched a sample obtained from a blood-stained washcloth in Ms. Vogt's bathroom. Appellant also could not be excluded as a contributor of DNA from dried blood samples taken from the sides of Ms. Vogt's kitchen sink. This was despite Appellant stating in the interview that he had never been in his grandmother's home. Thus, as there was sufficient direct and circumstantial evidence of Appellant's identity as Ms. Vogt's killer, his sufficiency claim has no merit, and the judgment of sentence must be upheld.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

7/30/2026